# O'CONNELL *v.* KOOB.

EVIDENCE; BURDEN OF PROOF; EQUITY; VOLUNTARY DEEDS; GIFTS.

1. Even in the absence of a confidential or fiduciary relation between the parties, where one person gains a great and manifest advantage over another by a voluntary instrument, the burden of proof is on the person receiving the benefit to show that the transaction was fair and honest.

2. Where an aged and illiterate woman who, while living with her daughter and son in law and dependent upon them for support, had conveyed her interest in certain real estate for the benefit of her son in law by deed in fee, seeks, after her daughter's death and when the son in law is about to remarry, to have the deed reformed, upon the ground that she believed when she made it that it was a deed in trust to raise money necessary to purchase an outstanding interest in the land and had no intention of making a gift to her son in law, but her testimony to that effect contains contradictions and inconsistencies, and is wholly uncorroborated and is flatly contradicted by that of her son in law and the attorney who drafted the deed and the notary before whom it was acknowledged, which is to the effect that the deed was explained to her and she fully understood the whole transaction, a court of equity will deny the relief sought.

No. 930.   Submitted January 5, 1900.   Decided March 6, 1900.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity for the reformation of a deed and for other relief.   *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Tracy L. Jeffords* and *Mr. Ashley M. Gould* for the appellant:

1. The conveyance in this case was made by an illiterate old woman to her son in law, who had managed her business affairs for nine years, in whom she reposed the utmost

confidence, and with whom she lived as a dependent, on his representation that she would have to join in the deed to give him the property so as to make a loan on it, and who thereupon did make a loan of the exact amount and for the exact purpose for which she knew the loan was desired. It is difficult to imagine a state of facts which calls more eloquently for the interposition of a court of equity.  *Smith* v. *Richards,* 13 Pet. 36; 1 Perry on Trusts (4th Ed.), Sec. 171, and cases cited.

2. Independently of actual fraud and misrepresentation, the relations existing between plaintiff and defendant Koob were such that a court of equity should not sustain a gift made by the former to the latter under the circumstances developed by the pleadings and testimony in this case.  2 Pom. Eq. Jur., Par. 956; 1 Perry on Trusts (4th Ed.), Sec. 210.

3. In a voluntary deed or instrument of gift the burden of proof is on the donee to show that the donor not only comprehended the immediate operation of the instrument, but the effect which it would produce in the coming time. *Hoghton* v. *Hoghton,* 15 Beav. 298; *Greenfield's Estate,* 2 Harris, 419; *Russell's Appeal,* 75 Penna. St. 269; *Todd* v. *Grove,* 33 Md. 188.  A court of equity will not be satisfied of such fairness on the one part and such freedom from influence on the other unless the donor had competent and independent advice in regard to the propriety of conferring the gift, and merely the presence of witnesses is not sufficient for this purpose.  *Griffiths* v. *Robins,* 3 Mad. 191; *Consett* v. *Bell,* 1 Younge & Col. Ch. Cases, 578; *Gibson* v. *Russell,* 2 Younge & Col. Ch. Cases, 104; *Nichols* v. *McCarthy,* 53 Conn. 323; *Haydock* v. *Haydock's Exr.,* 34 N. J. Eq. 570; *Huguenin* v. *Baseley,* 14 Ves. 273; 2 Lead. Cases in Eq. (Pt. 2), 1156; *Woodbury* v. *Woodbury,* 141 Mass. 329.

*Mr. J. J. Darlington* and *Mr. J. Edgar Smith* for the appellees.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The bill in this case was filed by the appellant, Johanna O'Connell, against the appellees, John W. Koob, John A. Schaeffer and William R. McCloskey, the two latter as trustees, for the purpose of having a certain deed made to John W. Koob reformed, and a trust in respect thereof declared, and for an account, etc. The court below, upon the pleadings and proof, dismissed the bill; and the complainant has appealed.

It is alleged in the bill that the complainant is a widow; that her husband, Jeremiah O'Connell, died in March, 1878, intestate, leaving her with two children, namely, Jeremiah A. O'Connell and Maggie C. O'Connell, and that the last named child, Maggie, married and became the wife of John W. Koob. That the husband of the complainant, at the time of his death, was seized of the north one-half of lot 29, in square 624, in the city of Washington, D. C., which was subject to a deed of trust, in which she had joined, and thereby conveyed her contingent right of dower. That on or about April 15, 1896, the two children, being desirous that complainant should not be deprived of all interest in the property, agreed to convey to her an undivided one-third interest therein, and, in pursuance of such agreement, by deed dated April 17, 1896, conveyed such undivided one-third interest to complainant; that, by deed of the same date, for and in consideration of $600, Jeremiah A. O'Connell, the son, conveyed all his undivided one-third share or interest in the property to his sister, Maggie C. Koob.

It is further alleged that, on or about the date of the above mentioned conveyances, the defendant, John W. Koob, in whose house and with whose family the complainant resided and had her home, represented to her that in order to pay to the son, Jeremiah A. O'Connell, the $600 for his interest in the property, it would be necessary for

her to execute a deed of trust on the property. That she can neither read nor write, and has little knowledge of business matters, but she had full confidence in said Koob, and, relying upon his representations, she executed a paper, which she has since ascertained to be an absolute deed in fee, conveying said property to one Howard C. Wall, who immediately afterwards conveyed the same to the defendant Koob; that her daughter, Maggie C. Koob, joined in the deed to Wall, and thus the whole title became vested in the defendant Koob. That there was no consideration for her conveyance to Koob; and that Koob subsequently and contemporaneously with the foregoing transactions, placed a deed of trust on the property to secure the sum of $650, which was subsequently released; and on August 13, 1897, he placed a deed of trust for $1,700 on the property to the defendants Schaeffer and McCloskey, as trustees, and which deed still remains a charge on the property.

The relief prayed is that the defendant Koob be decreed to hold an undivided one-third interest in said property in trust for the complainant, her heirs and assigns; that he be required to pay off and discharge the last mentioned mortgage or deed of trust, and in default of such payment and in the event of a sale under said deed of trust, that the interest of said Koob in the property be first applied to the payment of said indebtedness, and that he be required to account for one-third of the rents collected since April 17, 1896; and for general relief.

The complainant did not call for answers from the defendants under oath, but in express terms waived the oath. The defendant Koob filed a separate answer, and the other two defendants filed a joint answer.

The defendant Koob, by his answer, admits the relationship of the parties as stated in the bill; the dying seized of the property by the husband of the complainant as charged; and the making of the several conveyances as set forth in the bill; that the complainant occupied the property for

several years after the death of her husband, and that she left the property to take up her abode in the house and with the family of her son in law, the defendant Koob. That she resided in his house for about eight years, and until after the death of her daughter, the first wife of the defendant. It is admitted that she had full confidence in the defendant Koob; and it is also admitted that she could neither read nor write; but it is averred that she was and is a woman of strong, vigorous common sense, and of strong will and determination. It is averred that the deeds of conveyance referred to in the bill, made to the defendant's former wife and to himself, were made to avoid trouble and threatened litigation by the son, Jeremiah A. O'Connell, and to compose difficulties in the family. That the complainant fully understood and consented to the objects and purposes of said conveyances; and in the deed made by the complainant jointly with her daughter to Wall, there was no purpose or intention of making a deed of trust rather than the absolute and unqualified deed that was made; that said deed was fully explained to the complainant, and that said deed was executed by her with full knowledge of its contents and purport. And he avers that he in no manner or respect imposed upon or deceived the complainant, or made any false representations to her, whereby she was deceived or misled; and he avers that she never thought of making a question in regard to the character of the deed until it became known that he contemplated a second marriage. He denies all fraud and deception charged; and he also denies that there was any mistake in the nature and character of the deed made by the complainant.

The other defendants say that they are without knowledge of any of the matters and things charged in the bill, except the fact of the release of the deed of trust for $650, made by the defendant Koob, and the making of the deed of trust of the 13th of August, 1897, to them as trustees, to secure a loan of $1,700 made by the National Permanent

Building Association, and that the trust is still subsisting.

Replications were entered to the answers, and proof was taken on behalf of both sides. And the principal, indeed the only real question in the case on the pleadings, is, whether the deed executed by the complainant, jointly with her daughter, to Howard C. Wall is such as it was intended and supposed to be by the complainant at the time of making the same, or whether the deed is different in its nature and character from that intended and supposed to have been executed.

The claim set up by the defendant Koob is, that the conveyance by the mother in law and his wife to Wall is, and was intended to be, an absolute donation and transfer to him, the defendant, of the property embraced in the deed, and that there was no question of trust suggested or intimated. Of course, it is not alleged or contended that the deed to Wall, so far as it operated upon and was intended to convey the undivided two-thirds of the property, then vested in Maggie C. Koob, the wife, was intended to have the form of a deed of trust instead of an absolute deed. Wall was only an intermediary, and his deed to Koob only carried the title that he derived from the complainant and her daughter, to be at once conveyed to Koob, the husband. The complainant was examined as a witness on her own behalf, and she swears positively that her intention and purpose was to execute a deed of trust only, and not an absolute deed to Koob—that the object of the trust was to enable Koob to raise the purchase money, amounting to $600, to pay Jeremiah A. O'Connell for his interest in the property conveyed to his sister. But the inquiry is suggested, in respect to such a trust, why should the complainant have joined her daughter in the deed to enable the husband to raise the purchase money to be paid to Jeremiah, when the daughter owned two-thirds of the property? The $600 could have been raised on the daughter's interest, without pledging the one-third interest that had been then

but recently conveyed to the mother. The testimony of the complainant is far from being satisfactory; for though she is positive in the assertion that she only intended to execute the deed as a deed of trust, and supposed that she had done so, yet she is a good deal perplexed and confused in her testimony, and she is in some of the most material parts of it directly and positively contradicted by other witnesses. She is in fact the only witness in support of her case; the only other witness examined on her side being the son Jeremiah, and he was not present at any of the conversations between the complainant and the defendant Koob and his wife, in regard to the making of the deed, nor was he present at the execution of the conveyance made by the complainant to Wall. His testimony does not relate to the essential facts of the case.

There are, however, several circumstances in this case which are not disputed, and which are much relied on by the counsel for the complainant, and which are of a nature to require the relative situation of the parties to be considered, especially in regard to the burden of proof to show *bona fides* in the transaction. Prominent among these is the fact that the complainant is, and was at the time of making the deed, a woman of advanced years in life, and was very illiterate—so much so that she can neither read nor write; and being in that condition of comparative disqualification for business, she was more or less dependent upon those in whom she confided for proper advice and guidance in her business affairs. Then, she lived with the defendant and his wife, as a member of his family, and their relations were of a friendly nature. It is admitted that she confided in the defendant, and that the small business that she had was attended to by him; and that, in regard to the particular transaction in question, she had no independent counsel or adviser upon whom to rely. In addition to this, it is admitted that the attorney who was the draftsman of the deed executed by the complainant, was the

attorney of the defendant Koob, and that he received his directions for the preparation of the several deeds that were executed from the defendant, though, as it is shown in the evidence, he first consulted the complainant in regard thereto. These facts of themselves are sufficient to excite suspicion, and to require of the court the exercise of a jealous scrutiny into all the facts of the case. But such facts do not give rise to any such absolute presumption against the validity of the deed that it may not be overcome and explained by proof.

But there are other elements of the case that must be considered in connection with those just mentioned; and those are, that courts of equity, as well as courts of law, act upon the ground that every person who is not, from his peculiar condition or circumstances, under disability, is entitled to dispose of his property in such manner and upon such terms as he chooses; and whether his bargains are wise and discreet, or otherwise, or profitable or unprofitable, are considerations not for courts of justice, but for the party himself to deliberate upon. *Eyre* v. *Potter*, 15 How. 42, 59, 60. Hence, it is a well established rule in equity jurisprudence that, in the case of a stranger, or a person that stands in the relation of a stranger, and not in any confidential or fiduciary relation towards the maker of the deed or instrument in question, equity will not set aside a voluntary deed or donation, however improvident it may be, if it be free from the imputation of fraud, surprise, undue influence, and it be spontaneously executed or made by the grantor or donor with full information as to the effect of the instrument brought into question. But, on the other hand, it is equally well settled, that in all cases where it has been proved that a person standing in the relation of a stranger to the donor or grantor, and not in any peculiar or fiduciary relation from which undue influence can be inferred, has either by fraud, surprise, misrepresentation or undue influence, obtained from the party complaining what would

appear to be a voluntary donation or grant, a court of equity will at once set it aside, or make it conform to what the grantor or donor originally intended it to be. In such case, however, the burden of proof of fraud, surprise or undue influence would be completely thrown upon the donor or grantor; for in such case the donation or deed of conveyance is *prima facie* valid. But not so where a confidential or fiduciary relation exists between the parties, where such relation may give rise to the inference that the parties did not have, or may not have had, equal knowledge of the effect and consequences of what was done. In other words, where the relation of one party put him in position of taking undue advantage of the other, then he must show that he acted fairly, and not to the prejudice of the other; he must show that he did not abuse the confidence reposed in him, or that he did not take an undue advantage of the position occupied by him in his relation to the party complaining.

It may, however, be laid down as settled doctrine, that even in the absence of any special relation between the parties, where a person gains a great and manifest advantage over another by a voluntary instrument, the burden of proof is undoubtedly thrown upon the person receiving the benefit, and he is under the necessity of showing that the transaction is fair and honest; for although the court never prevents one person from being the voluntary object of the bounty of another, yet it must be shown that the bounty was purely voluntary, and not produced by any undue influence or misrepresentation, which the court views in all cases with the utmost abhorrence. *Billage* v. *Southee,* 9 Hare, 534, 540; *Blackie* v. *Clark,* 15 Beav. 595, 600; *Cook* v. *Lamotte,* 15 Beav. 234; *Allen* v. *Davis,* 4 DeG. & Sm. 133; *Price* v. *Price,* 1 DeG., Mac. & G. 308; 3 Lead. Cas. Eq. 122.

How, then, does this case stand upon the proof? As we have already stated, the complainant is the only witness in support of her case, and she is positively contradicted in respect to many of the material facts alleged in her bill.

She is flatly contradicted in respect to the most essential facts of her case by Koob, the defendant. He swears that the deed was made by the complainant upon the most perfect understanding by her of what the deed was to be ; and that the deed was prepared and executed strictly in accordance with that understanding on her part. He says that she never made a question as to what the deed should have been, or was intended to have been, until a long time after the deed was made, when she understood that he, the defendant, contemplated a second marriage. He utterly denies the making of any false representations to her in regard to the object and purpose of the deed, as charged in the bill. The testimony of the notary, Wilson, who took the acknowledgments to the deed to Wall, is full to the effect that he was present when the deeds were made, and that he took the acknowledgments thereof, and that before taking the acknowledgment of the complainant, he read over the deed executed by her, and fully explained it to her, and that he never heard it suggested that the deed should be in the form of a deed of trust. And so the solicitor, Smith, who prepared the deeds; he was present when the deeds were executed; and he testifies that he prepared the deeds as the attorney of Koob, but previous thereto he had an interview with the complainant, in which he explained the whole matter to her, and that she fully understood the purpose and object of the deed, and expressed her regret that she had not more to give to the defendant and his wife, as they had been very kind to her. He also testifies that the deed was fully explained to her at the time of its execution; and that there was no question of trust suggested in connection with the deed.

Previous to and at the time of the execution of these deeds, the relations between the complainant and her son, Jeremiah, were unpleasant and unfriendly, and the complainant was living with the defendant and his wife, on very amicable terms, though that relation with the defendant

did not exist long after the daughter's death. It would appear natural, therefore, that the complainant should have been willing to join in the deed to convey the property to her son in law. It was from him that she was deriving her support and comfort, and her interest in the property was the only means of making compensation for that support. In such case, to hold that the law will not allow a person, dependent on the kindness of others for her comfortable support, to show her gratitude towards them in the disposal of her property, would be a most unreasonable application of an equitable and just principle, intended for the protection of the weak and dependent against the deceit and imposition of those occupying positions of confidence. Indeed, if the principle were so applied, it would deprive such a person of a power over her property when it was of greatest use to her. But the principle has not been applied with any such rigor or strictness by courts of equity. The rule has been applied so as to afford protection under circumstances where it would seem to be required, but not beyond that. This is illustrated in many cases.

In the case of *Harris* v. *Tremenheare,* 15 Ves. 34, 40, where a person unacquainted with business, an invalid, and incapable of attending to his affairs, granted to an attorney, who was distantly related to him, and was his own steward, as he had been his father's, several leases for long terms, at nominal rents, it was strongly contended that this attorney and steward ought to prove that he had explained to the client what he was doing, and to have had a third person interposed; but the court said that there was no authority for holding that he could not take such leases as a pure gift from his employer. "If," said Lord Eldon, "I could find in the answer or evidence the slightest hint that the defendant laid before the testator any account of the value of the premises that was not perfectly accurate, that would induce me to set the leases aside, whatever the parties intended, upon the general ground that the principal never

would be safe if the agent could take a gift from him upon a representation that was not most accurate and precise." And the bill was dismissed as to those particular leases.

In the case of *Pratt* v. *Barker*, 1 Sim. 1, the court refused to set aside a voluntary deed executed by an old and infirm man in favor of a person who had attended him as a surgeon, and received the dividends of some stock for him; it appearing that the nature and effect of the deed were fully explained to the grantor by his solicitor, before he executed it, and that no undue influence had been exercised over him. This decision was made by Sir John Leach, vice chancellor, and upon appeal to the lord chancellor, the decision was affirmed for the reasons assigned by the vice chancellor. 4 Russ. 507.

These cases, and also many others, were reviewed and approved by Lord Chancellor Brougham, in his elaborate judgment in the case of *Hunter* v. *Atkins*, 3 My. & K. 113, 135, which has become a leading authority upon this subject in the English chancery.

The case of *Eyre et al.* v. *Potter et al.*, 15 How. 42, contains many circumstances closely analogous to those presented by the present case. That was a case where a widow filed a bill in equity, complaining that immediately upon the death of her husband, the son of the husband, together with another person, had imposed upon her by false representations, and induced her to part with all her right in her husband's estate for an inadequate price; but upon the proof in the case the bill was dismissed.

In that case it was alleged and attempted to be shown that the complainant was an aged and infirm woman, predisposed to nervous affections, and wholly inexperienced in the transaction of business, and that, whilst she was sick and oppressed with affliction and infirmity, the defendant, the son of the deceased husband, professing great sympathy and affection for her, availed himself of her distressed condition, and her ignorance of the value of the estate, with

which he was familiar, having been for several years the manager of it, combined with a certain named attorney to defraud the complainant, and to induce her to part with her interest in her estate; and to accomplish that end, made certain false representations as to the value of the estate, and the expense and trouble of managing it; and, by such false representations, prevailed upon her to sell and convey to the defendant Potter her entire interest in the valuable estate of her deceased husband, for the sum of $1,000 and an annuity of $600. She prayed that the assignment or transfer might be vacated and set aside.

But, by the answer and the evidence in the case, it was shown that the complainant was a woman of good capacity, and that she well knew the condition of her late husband's estate, and that she had not been in any manner deceived in regard thereto by the defendants, or either of them; that she fully understood the nature of the transaction between herself and Potter, the defendant, and had expressed herself entirely content therewith. The bill was dismissed by the circuit court, and that decision was affirmed by the Supreme Court.

In the present case, the proof produced on the part of the defendant Koob (unless it be disbelieved and put aside), is simply overwhelming to the effect that, while conceding that the complainant is illiterate and unable to read or write, and that her relations with the defendant Koob were of a confidential nature, yet the deed executed by her was explained to her by both the draftsman and the officer taking her acknowledgement thereto, and that she fully understood the whole transaction. Her own testimony standing alone with its contradictions and apparent inconsistencies, can not, as opposed to the testimony produced by the defendant, afford the foundation for the relief prayed for in the bill.

The decree appealed from must be affirmed; and it is so ordered.                                     *Decree affirmed.*