**In re ADOPTION OF A MINOR CHILD.**
**No. 87–54.**

United States District Court,
District of Columbia.

Dec. 28, 1954.

S. Jay McCathran, Jr., Washington, D. C., for petitioners.

C. K. Goodson, Washington, D. C., for intervener.

**YOUNGDAHL, District Judge.**

Petitioners seek to adopt a minor child. This court has jurisdiction under Title 16, Section 201 of the District of Columbia Code 1951, petitioners being legal residents of the District of Columbia. The natural mother has intervened seeking to reclaim her child which she previously relinquished to petitioner under a written consent for adoption. The mother now claims the written consent is invalid.

Intervener is unmarried. She became pregnant some time in May, 1953. Upon discovering this she manifested on several occasions her intention to have the child adopted and considered for this purpose a couple in Pittsburgh, or possibly one in New York. On January 26, 1954, she visited the home of a Mrs. Dengler and there discussed with both Mrs. Dengler and one Mrs. Marlin the possibility of having her baby, which was to be born in February, adopted by petitioners. She wrote her name and the natural father's name on a card for Mrs. Dengler as well as the statement that "The father understands and has given his permission that I find a good home for the baby." Prior to the birth of the baby she, accompanied by her mother, sought the advice of their family physician who recommended that they should have the child adopted.

The child was born on February 5, 1954. Petitioners were notified of this and on February 10, 1954, drove to Tyrone, Pennsylvania, to receive the baby on its release from the hospital the following day. After such release, the natural mother, accompanied by her own mother and others, drove to a notary where the consent to adoption was signed and notarized.

Although naturally upset, there is no indication that when the natural mother signed the consent paper she was unaware of the present or future consequences of her actions.

The natural father's written consent was executed in California on March 25, 1954. The petition for adoption was executed on April 19, 1954. Although there is some indication that the natural mother desired to withdraw her consent earlier, it was not until July 20, 1954, that she filed her motion to withdraw consent and to reclaim the child.

In any event, petitioners accepted the consent in good faith and have relied upon it. Since February 11, 1954, they have had custody of the baby, have tended to all its needs, spending considerable money to this end. It is apparent that they have become deeply attached to the child.

The natural mother signed the consent in the state of Pennsylvania. She therefore argues that Pennsylvania law governs the validity and effect of the consent. If this is so, the natural mother can withdraw her written consent as late as the time of the hearing on the petition for adoption. She contends in the alter-

native that the consent is governed by the laws of the District of Columbia so the consent is not legally sufficient since it does not reveal the identity of the adoptive parents. It is readily admitted by intervener that no case or statutory law in the District of Columbia compels this result. The argument is nevertheless urged upon the Court that because in states such as Pennsylvania the courts have consistently held that in the absence of statutory law, the adopting parents had to be named in the consent, and there is no statutory provision in the District to the effect that adopting parents need not be named, the Court should, by analogy, hold that they must be named.

Both of these major arguments are devoid of merit. In the first place, Congress gave studied consideration to the existing adoption statute for the District of Columbia and with deliberate intent, as a matter of public policy, provided distinct statutory provisions to govern the type of problem before the Court. In the second place, the courts in this jurisdiction have been generally admonished to determine the various facets of the consent issue within the letter and spirit of the statute and not according to the statutes or decisions of other jurisdictions. In re Adoption of a Minor, 1944, 79 U.S.App.D.C. 191, 144 F.2d 644, 156 A.L.R. 1001.

The statutory law in the District of Columbia provides that if the adoptee is under twenty-one years of age no decree of adoption can be made unless the Court finds consent by the father of an adoptee born out of wedlock, once he has acknowledged the adoptee and contributed voluntarily to its support. The natural mother must also consent. Consent by a parent who is a minor is not voidable because of such minority. District of Columbia Code 1951, Title 16, Section 202.

■ Full consents were signed by the natural parents containing acknowledgment of parental status, name of the infant, where it was born and the date thereof. There is a statement demonstrating that both parties fully understood their legal rights respecting the child; that they surrendered her to others unknown for the purpose of adoption as prescribed by the laws of the state of the place in which said adoption is to be effected; and that they were to remain unknown to the infant and adopting parents. These consents are clear, unequivocal, were made voluntarily, and as such bind the signatories. The Court is unable to find fraud, coercion or overreaching of any kind surrounding them.

■ Of course, the natural mother, under ordinary circumstances, should have first claim on her own child. At the same time the welfare of the child is of primary concern and sometimes it is not for the best interest of the child that it be retained in the custody of the mother. It is axiomatic that each case is governed by its unique factual setting.

Our own Court of Appeals, in a well-reasoned opinion by Judge Miller, has recently ruled that under circumstances strikingly similar to those presented here, it would be best that the child remain in the custody of the adoptive parents rather than in the custody of the natural mother. In re Adoption of a Minor, supra. In explaining why consent was made binding under the statute, Judge Miller, concerned over the startling growth of juvenile delinquency, declared:

"This threat to public order and private life has its roots, largely, in the undisciplined, neglected and abandoned children who constitute an unexpected by-product of our complex civilization. * * * Gradually, we are coming to understand that our efforts must go far back into the lives of these children in order that they may be restored, so far as possible, to the influences of normal homes and family life. The disciplines, the affections, the achievements, and the sense of security and belonging, which are possible only with such a background,

are of the essence in training for participation in modern life. Obviously, the problem and the need for remedial action is greater in the case of illegitimate children than of others." 79 U.S.App.D.C. at page 196, 144 F.2d at page 649.

The Court is satisfied both that the consent was freely and voluntarily given and that the child is physically, mentally and otherwise suitable for adoption, already having adjusted well in her new home; that the petitioners are fit, able and anxious to give the adoptee a proper home and education; and that adoption will serve the best interest of the adoptee. It is apparent that the adoptive parents have not only spent over $1,000 on the infant, but have acquired deep affection for the child; that they can give this child the security of a happy and normal home life filled with the love and understanding of both a mother and a father. These are things a child craves and deserves and which could not be afforded if returned to the natural mother where it would, among other things, have the stamp of illegitimacy impressed upon it.

The evidence compels this Court to conclude that the child's welfare would be most secure should it remain with the adoptive parents, aware that under other circumstances not present here, the natural mother should receive priority as to the custody of her natural offspring.

Underlying this opinion are the thoughts of Judge Miller when he said:

" * * * It is apparent that if in particular cases the unstable whims and fancies of natural mothers were permitted, first, to put in motion all the flow of parental love and expenditure of time, energy and money which is involved in adoption, and then, as casually, put the whole process in reverse, the major purpose of the statute would be largely defeated. Doctors of medicine and of divinity, potential adoptive parents and social workers would be stymied in their rehabilitative efforts. * * * The new law cannot prevent illegitimacy or remove its stigma, generally, but to the extent that it may secure desirable placement of even a few illegitimate children it may avoid some of its most dangerous results." 79 U.S.App.D.C. 197, 144 F.2d 650.

Upon the oral arguments and written briefs and upon all the evidence presented and filed here, the Court decrees that the child in controversy is legally adopted.

Counsel will prepare an order consistent with these findings.