In the Matter of J.M.A.L., Hollis Ann Levy, Appellant,

v.

LUTHERAN SOCIAL SERVICES OF the NATIONAL CAPITAL AREA, INC., a corporation, Appellee.

No. 79–317.

District of Columbia Court of Appeals.

Argued Nov. 13, 1979.

Decided July 24, 1980.

Rehearing En Banc Denied Sept. 9, 1980.

Ed Wilhite, Washington, D.C., for appellant.

Robert L. Pillote, Bethesda, Md., for appellee.

Before KELLY, FERREN and PRYOR, Associate Judges.

PRYOR, Associate Judge:

The natural mother of an adopted child appeals from the trial court's order denying her "Petition to Rescind Relinquishment of Parental Rights." Two issues are raised on appeal: (1) whether the trial court erred in failing to set aside appellant's relinquishment of parental rights and consent to adoption; and (2) whether the trial court erred in finding that the appellant's consent to adoption was being withheld contrary to the best interests of the child. For the reasons stated below, we affirm.[1]

During the final months of her pregnancy, appellant, unwed, and unemployed, became concerned about her ability to care for a child, as well as her own emotional stability. At the recommendation of a social worker from Columbia Hospital for Women, appellant visited appellee, Lutheran Social Services (L.S.S.), where she explored various child care options, including adoption. On March 6, 1978, appellant gave birth. During the next few months, she met with a counselor from L.S.S. on at least seven occasions, for further counseling regarding child care alternatives. At the same time, appellant was being counseled by the Child Protective Services Division of the District of Columbia Department of Human Resources (D.H.R.). This agency also discussed child care alternatives with the appellant, mentioning possible day care arrangements as well as the possibility of adoption.

In October and November of 1978, reacting to varied pressures, appellant transferred custody of her child on at least three occasions: twice by delivering the child to

---

1. Since we affirm the trial court's ruling that appellant legally relinquished her parental rights, it follows that appellee, the social agency, was authorized to consent to a lawful adoption. D.C. Code 1973, § 32–786(a). Thus, appellant's second contention, that her consent to adoption was properly withheld, does not raise a justiciable issue.

St. Ann's Home, and once by abandoning the child at Georgetown University Hospital. On each occasion, appellant appeared to be emotionally distraught and in search of relief for herself and adequate care for her child. The child was, according to a social worker at Georgetown Clinic, "extremely confused with flat affect and no response."

Appellant continued receiving counseling from L.S.S. and the Child Protective Services. On November 15, 1978, appellant informed the L.S.S. that she had decided to place her child for adoption. On that day, a counselor from the agency drove appellant and the child to the L.S.S. where the adoption papers were to be signed. Appellant decided not to sign the papers because she was unclear about what she should do. On the following day, November 16, 1978, appellant returned to L.S.S. where she completed and signed the relinquishment papers.

On November 17, 1978, appellant telephoned L.S.S. and requested that the child be returned to her. The agency, which had already placed the child in foster care and filed the appellant's relinquishment papers with the court, refused to return the child. On November 21, 1978, the child was placed with prospective adopting parents. These parents filed a "Petition for Adoption" on November 22, 1978. L.S.S. received a letter from appellant on November 27, 1978, expressing her desire to have the child returned.

On December 19, 1978, appellant filed a "Petition to Rescind Relinquishment of Parental Rights." After hearing the evidence and taking the matter under advisement, the trial court denied the motion. This appeal followed.

I

Appellant earnestly argues that the trial court erred in failing to set aside appellant's relinquishment of parental rights and consent to adoption. More specifically, it is urged that the court acted erroneously in concluding that the primary question to be considered was whether appellant executed the relinquishment and consent to adoption freely, voluntarily and with a full understanding of the consequences. Rather, appellant contends that the court should have determined not only whether the consent was valid when initially given, but additionally, should have considered whether the relinquishment had been acted upon by innocent third persons.

Appellant thus asks this court to consider the rights and responsibilities, under the law, of natural parents, adoption agencies, and persons providing placement for the child, when a natural parent wishes to withdraw a relinquishment of parental rights. We are mindful of the enormous emotional impact that rules of law in this area have upon the parties involved. Our highest priority must be to provide a stable environment for the child. While we must be vigilant to protect the rights of natural parents to raise and care for their children, nonetheless, adoption agencies require a predictable legal framework to effect proper placement. See May v. Anderson, 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221 (1953); Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923).

Under the District of Columbia Code, an adoption may be accomplished in one step or two. Natural parent(s) may execute a "written statement of consent" to the adoption of the child by another person, D.C. Code 1973, § 16–304(a); or, the natural parent(s) may execute, and have recorded and filed with the Family Division of the Superior Court, a "relinquishment of parental rights," D.C. Code 1973, § 32–786(a), in which case a "licensed child-placing agency [which has] been given the permanent care and guardianship" of the child "is vested with parental rights and may consent to the adoption of the child . . . ." Id. In the first case, the prospective adopting parents commonly have been identified by the time the natural parents' "consent to adoption" is executed; legally the transfer is from natural parent to adoptive parent. In the latter case, however, adopting parents may or may not yet be available; the

natural parent surrenders the child to the agency, executing a "relinquishment of parental rights" which, in effect, grants the agency license to consent to eventual adoption. Thus, in this situation, adoption is a two-step procedure.[2]

In the present case, we are concerned with this second situation and are immediately faced not only with the fact that appellant executed a relinquishment of parental rights but also with a governing statute, D.C. Code 1973, § 32–786(a), which provides in part:

Any relinquishment of parental rights other than by court order as provided in this subsection may be revoked upon the written consent of all the parties to said relinquishment . . . ..

Appellee argues that this statute provided the exclusive basis for revoking a relinquishment—"consent of *all* parties"—and that appellant's purported revocation must fail, as a result, because appellee declined to consent. In short, the statute precludes a unilateral revocation under any circumstances. This argument has force, not only because of the language of the statute, but also because of the obvious reasons why certainty as to relinquishment is essential. Third parties, including child-placing agencies and prospective adoptive parents, must be able to rely on the relinquishment; and, in the interest of the child, relinquishment should not be perceived as revocable, lest it be given too easily and equivocally.

We agree that, as a general rule, a "legally executed relinquishment" cannot be revoked absent "written consent of all the parties." The threshold question, therefore, is whether the statute permits an exception. We have held, with respect to the adoption statute, D.C. Code 1973, § 16–304(a), that "consent of a parent once given and acted upon should not be withdrawn without cause." *In re S.E.D.*, D.C.App., 324 A.2d 200, 202 (1974) (quoting *In re Adoption of a Minor*, 79 U.S.App.D.C. 191, 194, 144 F.2d 644, 647 (1944)). In so holding, we cited with approval *In re Adoption of a Minor*

*Child,* 127 F.Supp. 256 (D.D.C.1954), which, in effect, elaborated on such cause. The court stated that for a consent to be valid, it must be given "voluntarily;" for example, it cannot be induced by "fraud, collusion or overreaching." *Id.* at 258; *see In re S.E.D., supra* at 202. We conclude that this approach is equally valid for determining whether there has been a "legally executed relinquishment of parental rights" under D.C. Code 1973, § 32–786(a). Once the relinquishment has been executed and acted upon by filing with the court, *see id.,* it is irrevocable absent a showing that it has been given involuntarily.

Appellant asserts that another factor should be added to consideration of whether there is cause to set aside the relinquishment of parental rights; whether it has been acted upon by innocent third persons. If it has not, appellant urges that revocation of a voluntary relinquishment, should be allowed. She contends that L.S.S. and the adoptive parents of her child did not begin to rely upon her relinquishment of parental rights until after she communicated her desire to revoke it. Since appellant did not induce their reliance, she contends that the court should have permitted her to revoke the relinquishment.

Although courts of this jurisdiction have recognized that a reliance factor is among those justifying a decision not to allow revocation, *see In re Adoption of a Minor, supra* at 195, 144 F.2d at 648; *In re Adoption of a Minor Child, supra* at 259, we do not read these decisions to say that *absent* such reliance, revocation is allowable. Nor, in any event, would it be meaningful to read a "no reliance" exception into § 32–786(a). Once a licensed child-placing agency has filed an executed relinquishment of parental rights with the court, *see id.,* some reliance already has been established in the sense that financial and emotional efforts to care for the child, through foster care or adoption, have been initiated. Although "[i]t is axiomatic that each case is governed by its unique factual setting," *In*

---

**2.** As in the present case, the relinquishment form commonly includes a consent to adoption, but given the statutory scheme that is superfluous.

re *Adoption of a Minor Child, supra* at 258, it would undermine the significant need for certainty were we to permit a court to factor into the determination of the voluntariness of the relinquishment the nature and extent of reliance by third persons. No principled guidelines for sorting out sufficient and insufficient reliance, in this context, can be articulated; a child-placing agency could not assure adoptive parents that its actions had been sufficient to put the relinquishment beyond revocation.

Accordingly, we hold that, absent "consent of all the parties," the only "cause" justifying court-ordered revocation of a natural parent's relinquishment of parental rights once filed with the court, pursuant to D.C. Code 1973, § 32–786(a), will be a conclusion that the relinquishment has not been given "voluntarily"; *e. g.*, it has been induced by fraud, coercion, material mistake, or other factors that traditionally bear on a determination of voluntariness.

In the case at bar, after hearing all of the evidence, the trial court specially found that Hollis Ann Levy freely and voluntarily executed the relinquishment papers, with full understanding of the adoption process and the finality of her act. The court, accordingly refused to set aside the relinquishment. Having reviewed the whole record, we cannot conclude that this judgment was plainly wrong or without evidence to support it. D.C. Code 1973, § 17–305(a). We must, therefore, affirm.

*Affirmed.*