**In re Return of the McKEAN COUNTY TAX CLAIM BUREAU OF the TAX SALE HELD SEPTEMBER 12, 1994.**

**McKean County Tax Claim Bureau, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted Feb. 9, 1996.
Decided June 20, 1996.

Douglas J. Garber, for Appellant.

Mark J. Hollenbeck, for Appellee.

Before SMITH and PELLEGRINI, JJ., and MIRARCHI, Senior Judge.

SMITH, Judge.

The McKean County Tax Claim Bureau (Bureau) appeals from an order of the Court of Common Pleas of McKean County (trial court) that set aside the Bureau's tax sale of property belonging to Albert Lemmer and declared that sale null and void. The issues presented are whether the Bureau had the authority to institute a new policy of refusing to accept personal checks tendered in payment after June 30, 1994 for delinquent taxes on properties listed for sale at a September 12, 1994 tax sale; and whether the trial court erred as a matter of law in setting aside the tax sale of Lemmer's property on the ground that the Bureau's tax sale notice to Lemmer, which stated that personal checks would not be accepted after June 30, 1994, was inadequate and misleading.

The trial court made the following findings of fact. Lemmer, a resident of Baltimore, Maryland, owns a one-third interest in 189.07 acres of land in Ceres Township, McKean County. Lemmer first learned that he owned an interest in the property when he received a notice that the 1989 taxes had not been paid. In 1991 and 1992, Lemmer went to Smethport to pay the delinquent taxes and was told by the Bureau that the taxes had been paid by one of the other owners. In 1993, Lemmer went to Smethport and paid the Bureau $825.92 by personal check for the unpaid balance of taxes on the Friday before the scheduled Monday tax sale.

On June 6, 1994, Lemmer received a notice that the 1992 taxes were unpaid. At 9:00 a.m. on September 12, 1994, the morning of the scheduled tax sale, Lemmer appeared at the Bureau to pay the unpaid balance on the tax. The Bureau's Director refused to accept Lemmer's personal check and demanded payment by certified check. Lemmer was unaware of the Bureau's new policy refusing to take personal checks for delinquent taxes after June 30, 1994 and was unable to pres-

ent a certified check by 10:00 a.m. Lemmer testified that his personal checks have never been refused and that he offered to call his bank but the Bureau continued to refuse. As a result, the property was sold at public sale.

██ Lemmer filed exceptions to the tax sale. The trial court upheld the exceptions on the ground that the Bureau, in its June 6, 1994 Notice of Public Sale, did not provide Lemmer with adequate notice of its change in policy regarding personal checks, thereby preventing Lemmer from paying his taxes in the manner he had in the past. The trial court found that the notice was not set out in bold face, block type, color or in any other way reasonably calculated to draw a taxpayer's attention to the policy change. The trial court also found that the notice was misleading in that it was not clear whether the policy regarding personal checks applied to the payment of delinquent taxes or applied to the terms of the sale. Having determined that Lemmer was deprived of his property without due process of law, the trial court set aside the tax sale and declared it null and void. The Bureau appeals.[1]

██ Before this Court the Bureau contends, inter alia, that Lemmer was provided with adequate notice of the Bureau's policy regarding personal checks, and therefore his due process rights were not violated. The Bureau states that the June 6, 1994 Notice of Public Sale, which Lemmer admits that he received, contains the notation: "NO PERSONAL CHECKS ACCEPTED AFTER 6/30/94." Lemmer admitted that this notation was printed on the notice he received but stated that he failed to observe it.

The Bureau cites *Fusaro v. Pennsylvania Public Utility Commission,* 34 Pa.Cmwlth. 14, 382 A.2d 794 (1978), for the proposition that notice of a policy change is adequate and need not be set forth on a separate piece of paper, where the notice is neither inconspicuous nor innocuous. *Fusaro* concerned a notice to file a written answer to a Pennsylvania Public Utility Commission (PUC) complaint. The notice was clear and unambigu-

---

**1.** In appeals from tax sales, this Court's scope of review is limited to determining whether the trial court abused its discretion, rendered a decision without supporting evidence or clearly erred as a matter of law. *Darden v. Montgomery County Tax Claim Bureau,* 157 Pa.Cmwlth. 357, 629 A.2d 321 (1993).

ous: the respondent had 20 days to file an answer to the PUC complaint. Furthermore, the procedures regarding PUC complaints were published in the Pennsylvania Bulletin. In contrast, the notification in the present case is ambiguous and misleading because it is unclear whether the notice regarding personal checks applies to the payment of delinquent taxes or instead applies to the terms of the public sale. As a consequence, *Fusaro* is clearly distinguishable.

Nonetheless, the Bureau contends that Lemmer must be charged with knowledge of the Bureau's change in policy regarding personal checks for the simple reason that he admitted receipt of the June 6, 1994 notice, which contained the notation in question. To support its position, the Bureau also cites *Borough of Bridgewater v. Pennsylvania Public Utility Commission,* 181 Pa. Superior Ct. 84, 97, 124 A.2d 165, 171 (1956), where the Court quoted the Restatement of Agency § 9(1) (1933): "[One] has notice of a fact if he or his agent knows the fact, has reason to know it, should know it, or has been given notification of it." Here, although Lemmer admitted receiving the Bureau's June 6, 1994 Notice of Public Sale, he nevertheless testified that he was unaware of the Bureau's new personal check policy. The fact that Lemmer received the notice does not alter the fact that the notation regarding personal checks was misleading and ambiguous. This Court accordingly agrees with the trial court that Lemmer was not given proper notification of the Bureau's change in policy in violation of his due process rights.

In *Tracy v. County of Chester, Tax Claim Bureau,* 507 Pa. 288, 489 A.2d 1334 (1985), the Supreme Court stated that somehow, over the years, taxing authorities have lost sight of the fact that it is a momentous event under the United States and Pennsylvania Constitutions when a government subjects a citizen's property to forfeiture for the non-payment of taxes. The Court specifically noted that " 'the purpose of tax sales is not to strip the taxpayer of his property but to insure the collection of taxes.' " *Id.* at 296, 489 A.2d at 1339 (quoting *Hess v. Westerwick,* 366 Pa. 90, 98, 76 A.2d 745, 748 (1950)). Had Lemmer been given adequate notice of the Bureau's change in policy regarding personal checks, Lemmer would have had an opportunity to comply with that policy.[2]

For the reasons discussed above, the Court need not address whether the Bureau possessed the authority to institute such a policy. The order of the trial court is affirmed.

### ORDER

AND NOW, this 20th day of June, 1996, the order of the Court of Common Pleas of McKean County is hereby affirmed.

---

**2.** Lemmer, who was 79 years old at the time of the hearing before the trial court, also explained that he prefers to pay his taxes on the last day because if he died the day before, he would save that money. Citing *Appeal of Marra,* 131 Pa. Cmwlth. 652, 571 A.2d 551, *appeal denied sub nom. Petition of Frank,* 526 Pa. 650, 585 A.2d 470 (1990), the Bureau contends that a taxpayer who does not pay his taxes until "the eleventh hour" has failed to sufficiently protect his interests. Unlike the taxpayer in *Appeal of Marra* who ignored the tax sale under the mistaken belief that the taxes were already paid (his attorney supplied him with the wrong information), Lemmer was present at the Bureau's office the day of the tax sale and was ready and willing to pay the tax. Accordingly, the Bureau's reliance on *Appeal of Marra* is misplaced.