### Darlene Ann YOURICK

v.

### COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Argued Oct. 15, 2008.

Decided Feb. 4, 2009.

Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellant.

Robert G. Del Greco, Jr., Pittsburgh, for appellee.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, SIMPSON, Judge, LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge BUTLER.

The Pennsylvania Department of Transportation, Bureau of Driver Licensing (PennDOT) appeals from the November 16, 2007 order of the Court of Common Pleas of Allegheny County (trial court) setting aside its suspension of the operating privileges of Darlene Ann Yourick (Yourick). PennDOT suspended Yourick's driver's license pursuant to Section 1547 of the Vehicle Code[1] after she refused to submit to chemical testing following her arrest for driving under the influence of alcohol (DUI).

On February 28, 2007, Yourick was arrested by Officer Sheldon Summers for DUI and was taken to the Forest Hills police station, where she was asked to submit to a breathalyzer test. Officer Summers read the chemical test warnings required by Section 1547(b) of the Vehicle Code to Yourick, three times, as they appeared on the August 2006 DL–26 Implied Consent Form (DL–26 Form).[2] She read the form and asked questions. The first

---

1. 75 Pa.C.S. § 1547. Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(i), commonly referred to as the "Implied Consent Law," authorizes suspension of the driving privileges of a licensee where the licensee is placed under arrest for driving under the influence of alcohol, and the licensee refuses a police officer's request to submit to chemical testing.

2. The August 2006 version of the DL–26 Form states:

1. Please be advised that you are under arrest for driving under the influence of alcohol or controlled substance in violation of Section 3802 of the Vehicle Code.

sentence of Warning 3 on DL–26 Form states: "[i]t is my duty as a police officer to inform you that if you refuse to submit to the chemical test, your operating privileges will be suspended for at least 12 months, and up to 18 months, if you have prior refusals or have been previously sentenced for driving under the influence." [3] Based upon her interpretation of the third paragraph of the DL–26 Form and the fact that she did not have any prior refusals, Yourick refused chemical testing.

On March 30, 2007, PennDOT notified Yourick that her driving privileges were being suspended for one year, effective May 4, 2007, as a result of her refusal to submit to chemical testing on February 28, 2007. Yourick appealed the suspension to the Court of Common Pleas of Allegheny County. The trial court held a *de novo* hearing on September 27, 2007. At the beginning of the hearing, Yourick stipulated that she was arrested for driving under the influence of alcohol; that there were reasonable grounds for requesting that she submit to a chemical test; that she was asked to submit to a breathalyzer test; and, that she refused to take the test.

On November 16, 2007, the trial court sustained Yourick's appeal, finding that the warning read by Officer Summers from the DL–26 Form to Yourick was poorly drafted and vague, thereby preventing Yourick from making a knowing and conscious refusal.[4] PennDOT appealed to this Court. Our review is limited to determining whether the trial court committed an error of law or abused its discretion, and whether necessary findings of fact were supported by substantial evidence. *Reinhart v. Dep't of Transp., Bureau of Driver Licensing,* 946 A.2d 167 (Pa. Cmwlth.2008).

PennDOT argues on appeal that the trial court erred as a matter of law in con-

---

2. I am requesting that you submit to a chemical test of —— (blood, breath or urine. Officer chooses the chemical test).

3. It is my duty as a police officer to inform you that if you refuse to submit to the chemical test, your operating privileges will be suspended for at least 12 months, and up to 18 months, if you have prior refusals or have been previously sentenced for driving under the influence. In addition, if you refuse to submit to the chemical test, and you are convicted of or plead to violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, because of your refusal, you will be subject to the more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code, the same as if you would be convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000.00, up to a maximum of five years in jail and a maximum fine of $10,000.

4. It is also my duty as a police officer to inform you that you have no right to speak with an attorney or anyone else before deciding whether to submit to testing and any request to speak with an attorney or anyone else after being provided these warnings or remaining silent when asked to submit to chemical testing will constitute a refusal, resulting in the suspension of your operating privileges and other enhanced criminal sanctions if you are convicted of violating Section 3802(a) of the Vehicle Code.

3. According to Yourick, Warning 3 in the DL–26 Form was revised in December of 2007 to read: "[i]t is my duty as a police officer to inform you that if you refuse to submit to the chemical test, *your operating privilege will be suspended for at least 12 months, and up to 18 months if* you have prior refusals or have been previously sentenced for driving under the influence." Appellant's Brief at 22 n. 8. PennDOT explains that it was again revised in May of 2008 to read: "[i]f you refuse to submit to the chemical test, *your operating privilege will be suspended for at least 12 months.* If you previously refused a chemical test or were previously convicted of driving under the influence, *you will be suspended for up to 18 months ....*" Appellee's Brief at App. A. (Emphasis added).

4. The trial court issued its opinion on January 30, 2008.

cluding that, due to what it perceived as ambiguity in the DL–26 Form warnings, Yourick could not make a knowing and conscious refusal to submit to chemical testing. We agree. However, we find that the ultimate issue before this Court is whether the DL–26 Form warning was sufficient as a matter of law.

■ The operation of a motor vehicle in Pennsylvania "is a privilege subject to such conditions as the legislature may see fit to impose, . . . ." *Dep't of Transp., Bureau of Driver Licensing v. Hoover*, 147 Pa.Cmwlth. 70, 606 A.2d 1264, 1266 (1992) (Palladino, J., dissenting). Among the conditions imposed upon that privilege is the implied consent to submit to chemical testing where there is reasonable cause to believe a licensee is driving under the influence of alcohol and/or a controlled substance. *Hoover.* Section 1547 of the Vehicle Code is a clear statement of the legislative purpose to keep drunk drivers off the roads. *Id.* Section 1547(b) of the Vehicle Code states:

(1) If any person placed under arrest for a violation of section 3802 [(relating to DUI)] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privileges of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

(ii) For a period of 18 months if any of the following apply:

(A) The person's operating privileges have previously been suspended under this subsection.

(B) The person has, prior to the refusal under this paragraph, been sentenced for:

(I) an offense under section 3802;

(II) an offense under former section 3731[ (related to serious traffic offenses)];

(III) an offense equivalent to an offense under subclause (I) or (II); or

(IV) a combination of offenses set forth in this clause.

(2) It shall be the duty of the police officer to inform the person that:

(i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and

(ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

■ It is well-settled that, in order to sustain a one-year license suspension under Section 1547 of the Vehicle Code, PennDOT must show that the driver (1) was placed under arrest for driving under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and, (4) was specifically warned that refusal would result in the suspension of his/her driver's license. *Martinovic v. Dep't of Transp., Bureau of Driver Licensing*, 881 A.2d 30 (Pa.Cmwlth.2005). Once PennDOT's "burden has been met, the motorist must prove that his refusal was not knowing or conscious or that he was physically unable to take the test." *Dep't of Transp., Bureau of Driver Licensing v. Boucher*, 547 Pa. 440, 446, 691 A.2d 450, 453 (1997).

There is no question that Yourick was placed under arrest for driving under the influence of alcohol, was asked to submit to a chemical test, she refused to do so, and Officer Summers read all four warnings on the DL–26 Form verbatim to Yourick three times, and that she read it herself. N.T. at 4–8, 10–11, 13–14; R.R. at 14a–18a, 20a–21a, 23a–24a, 33a, 51a. In order for

Yourick to prevail on the appeal of her license suspension Yourick must, therefore, prove that her refusal to submit to chemical testing was not knowing or conscious.[5] She attempts to do so by proving that her subjective interpretation of the wording of Warning 3 led her to refuse the test.

Because the "knowing and conscious" standard is not explicitly found in Section 1547, it "must be strictly construed as it creates exceptions to the clear language and policy of the implied consent law." *Hoover* at 1269. There is no requirement in Vehicle Code Section 1547(b)(2)(i) that the implied consent warning issued by an officer contain any specific wording. It must merely "inform" a licensee that his/her "operating privilege will be suspended upon refusal to submit to chemical testing." 75 Pa.C.S. § 1547(b)(2)(i). The Pennsylvania Supreme Court affirmed this Court's holding that a warning is legally sufficient if it informs the licensee that refusing a request for chemical testing means that he/she "will be in violation of the law and will be penalized for that violation." *Dep't of Transp., Bureau of Driver Licensing v. Weaver,* 590 Pa. 188, 191, 912 A.2d 259, 261 (2006), citing *Weaver v. Dep't of Transp., Bureau of Driver Licensing,* 873 A.2d 1, 3 (Pa.Cmwlth. 2005).[6] The DL–26 Form did just that.

■ Warning 3 of the DL–26 Form begins, "[i]t is my duty as a police officer to inform you that if you refuse to submit to the chemical test, your operating privileges will be suspended for at least 12 months, and up to 18 months, if you have prior refusals or have been previously sentenced for driving under the influence." (R.R. 33a). We hold that this warning sufficiently apprises the driver hearing and/or reading it that, if he/she refuses to submit to the chemical test, his/her operating privileges "will be suspended." That a particular motorist hearing the warning may question its interpretation is not a sufficient basis upon which to state that the refusal was not knowing and conscious. In fact, the Pennsylvania Supreme Court has held that "[a] motorist's subjective beliefs are an insufficient justification for refusing to comply with the mandates of the Implied Consent Law." *Dep't of Transp., Bureau of Driver Licensing v. Scott,* 546 Pa. 241, 249, 684 A.2d 539, 543 (1996) (driver did not believe the officer's warning). Further, we find it is unreasonable for a driver, whose operating privileges were granted subject to his/her implied consent to submit to chemical testing where there is reasonable cause to believe a licensee is driving under the influence of alcohol, to believe that there would not be a penalty for failure to submit to that testing.

We hold, therefore, that the DL–26 Form is sufficient as a matter of law to meet the warning requirement under Vehicle Code Section 1547(b), and that it appropriately apprised Yourick that her license would be suspended if she refused chemical testing on February 28, 2007.

Based upon the foregoing, we hold that the trial court erred, and its November 16, 2007 order must be reversed.

---

5. There is no allegation in the record or on appeal that Yourick was physically unable to take the test.

6. We acknowledge that *Weaver* examined the sufficiency of an earlier version of the implied consent warning under Section 1547(b)(2)(ii), as opposed to Section 1547(b)(2)(i); however, the variation in subsections and versions does not change the ultimate conclusion that an implied consent warning in Pennsylvania must notify a licensee that he/she will be in violation of the law and will be penalized for that violation if he/she refuses to submit to chemical testing.

*ORDER*

AND NOW, this 4th day of February, 2009, the November 16, 2007 order of the Court of Common Pleas of Allegheny County is REVERSED.

DISSENTING OPINION BY Judge LEAVITT.

Respectfully, I dissent. Darlene Yourick believed, mistakenly, that her driving privileges would not be affected if she declined chemical testing. Because Yourick's mistaken belief was created by PennDOT's poorly worded DL–26 warning, I would sustain her suspension appeal.

The DL–26 warning is mandated by Section 1547(b)(2) of the Vehicle Code, which states:

(2) It shall be the duty of the police officer to inform the person that:

(i) the person's operating privilege *will be suspended* upon refusal to submit to chemical testing; and

(ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c)(relating to penalties).

75 Pa.C.S. § 1547(b)(2) (emphasis added). The warning required by Section 1547(b)(2) is drafted by PennDOT, placed on its "DL–26 Form" and distributed to police departments across Pennsylvania. The DL–26 warning is then read aloud by the arresting officer to the motorist.

The DL–26 warning read to Yourick stated as follows:

[I]f you refuse to submit to the chemical test, your operating privilege will be suspended for at least 12 months, and up to 18 months, *if you have prior refusals or have been previously sentenced for driving under the influence.*

Form DL–26, Reproduced Record at 33a (R.R. ——) (emphasis added). Yourick also read the form herself. Because Yourick did not have a prior refusal or conviction, she believed that the suspension warning did not apply to her.[1] Stated otherwise, Yourick understood the final clause to apply to the entire warning, not just to the phrase "up to 18 months." The trial court found Yourick's reading reasonable, observing that PennDOT's run-on sentence was "vague."[2] Accordingly, the trial court sustained Yourick's appeal.

---

1. Yourick testified that she was 47 years old and had worked for the University of Pittsburgh Medical Center for 25 years in its legal and medical malpractice departments. Her job involves reading and evaluating forms, such as patient consent forms, on a daily basis. Based on the warnings read from the DL–26 form, Yourick believed that her license would not be suspended if she refused chemical testing because she never had a prior refusal and was never before sentenced for driving under the influence. She pointed out:

The criteria, specifically the word if beginning on the very first line—if you refuse to submit to the chemical test your operating privileges will be suspended for at least twelve months, and up to eighteen months, if you have had a prior refusal—which I have not—or if you have been previously

sentenced for driving under the influence, which I have not.

R.R. 21a. Yourick voiced her concern about the meaning of that sentence to Officer Summers, but he informed her that she had no right to speak with anyone.

The trial court concluded that the DL–26 warning was vague, preventing Yourick from making a knowing and conscious refusal; therefore, a suspension was not warranted. However, the "knowing and conscious refusal" defense is irrelevant. The real issue is whether PennDOT met its threshold burden of proving that Yourick was specifically warned that a refusal to undergo chemical testing would cause her license to be suspended.

2. Specifically, the trial court observed that PennDOT could have avoided confusion by using two sentences, not one, to convey its

The majority reverses the trial court for the stated reason that the warning read to Yourick contained the words "will be suspended." The majority assigns no significance to the fact that the phrase "will be suspended" was qualified by the phrase, "if you have prior refusals or have been previously sentenced for driving under the influence."[3] Further, the majority assigns no significance to the trial court's factual finding that it was the ambiguous wording of PennDOT's DL–26 warning that caused Yourick to refuse chemical testing.[4]

PennDOT concedes that its DL–26 warning is capable of two readings: that intended by PennDOT and that understood by Yourick. Brief for Appellant on Reargument at 22–23.[5] A sentence that can be read two or more ways is ambiguous. *Barasch v. Pennsylvania Public Utility Commission*, 516 Pa. 142, 156, 532 A.2d 325, 332 (1987). There can be no dispute that the warning given to Yourick was ambiguous.

Ambiguities should and will be construed against the government. This principle has its foundation in the rule of lenity that provides that any ambiguity in a criminal statute will be construed in favor of the defendant. The rule of lenity requires a

> clear and unequivocal warning in language that people generally would understand, as to what actions would expose them to liability for penalties and what the penalties would be.

*Commonwealth v. Reaser*, 851 A.2d 144, 149 (Pa.Super.2004) (quoting *Commonwealth v. Cluck*, 252 Pa.Super. 228, 381 A.2d 472, 477 (1977)). Application of the rule of lenity extends beyond the context of criminal statutes.[6]

It is a general principle, applicable in a variety of circumstances, that if "there is any ambiguity in the terms of a notice, rendering its meaning doubtful, the doubt must be resolved against the person giving the notice." 66 C.J.S. *Notice* § 33 at 471 (2002). This principle applies with equal force to the "person" that happens to be a government agency. The Court of Appeals for the District of Columbia has explained:

> In other areas of administrative law, we have emphasized the importance of eliminating ambiguity and, where we have

intended meaning that (1) any refusal results in a 12–month suspension and (2) a second refusal or previous sentence for DUI may result in an 18–month suspension.

3. Periodically, PennDOT revises its DL–26 warning. The one read to Yourick has been replaced by a warning that eliminates the ambiguity that misled Yourick.

4. The majority criticizes Yourick's understanding of the DL–26 warning as not applying to her as "unreasonable." However, even PennDOT concedes that its DL–26 warning could be understood to have the meaning Yourick gave it.

5. In its application for reargument, PennDOT wrote:

> The Bureau acknowledges that, because of the superfluous comma following the words

"and up to 18 months," it is possible for this sentence to be understood to have one or the other of two different meanings.

Application for Reargument En Banc at 7. The same acknowledgement appeared in PennDOT's Brief on Reargument at 22. It is not the "superfluous comma" alone that creates the ambiguity. There is one central declaration in the sentence, *i.e.*, "you will be suspended," and it is modified by two conditional and dependent clauses that begin with the word "if." It is the presence of two dependent clauses in one sentence that creates the ambiguity, and removing the "superfluous comma" does not eliminate the ambiguity.

6. Consistent with the rule of lenity, the Statutory Construction Act of 1972, 1 Pa.C.S. § 1928, requires that every penal provision, whether in a civil or criminal statute, be construed strictly.

found ambiguity, we have construed it against the government agency that drafted the language.

*In the Matter of D.R.*, 541 A.2d 1260, 1264 (D.C.1988).[7]

Likewise, the appellate courts of Pennsylvania have held, in a variety of contexts, that the individual who receives an ambiguous governmental directive, whether drafted by the legislature, a court or an administrative agency, is entitled to have the ambiguity construed in her favor. For example, in *Carborundum Company v. Combustion Engineering, Inc.*, 263 Pa.Super. 1, 396 A.2d 1346 (1979), the Superior Court concluded that a finding of civil contempt was improper given the language in the order that was allegedly violated, explaining:

> The entry of an injunction is, in some respects, analogous to the publication of a penal statute. It is a notice that certain things must be done or not done, under a penalty to be fixed by the court. Such a decree should be as definite, clear, and precise in its terms as possible, so that there may be no reason or excuse for misunderstanding or disobeying it; and, when practicable, it should plainly indicate to the defendant all of the acts which he is restrained from doing, without calling upon him for inferences or conclusions about which persons may well differ.

\* \* \*

Thus, any ambiguities or omissions must be construed in favor of the person charged with contempt.

7. In the above-cited case, the statute required that a revocation of a decision to relinquish parental rights must be made in writing. The agency form notifying parents of this requirement was ambiguous. Because the agency created the ambiguity, the Court held that a parent receiving this form could effect a revocation either orally or in writing. *See also Basken v. District of Columbia Board of Zon-*

*Id.* at 1348. Similarly, in *In Re: Return of the McKean County Tax Claim Bureau*, 677 A.2d 1325 (Pa.Cmwlth.1996), this Court set aside a tax sale because of an unclear, ambiguous notice sent to the property owner by the tax claim bureau. Likewise, in *Valianatos v. Zoning Hearing Board of Richmond Township*, 766 A.2d 903 (Pa.Cmwlth.2001), this Court set aside a zoning ordinance as void *ab initio* because the township's published notice that the ordinance would be enacted at the upcoming meeting was unclear. We explained that "the townships draft the public notices and ... this Court and our Supreme Court have consistently interpreted ambiguous notices in favor of property owners." *Id.* at 906.

The principle of interpreting ambiguous language against the drafter has been applied specifically to the DL–26 warning. This Court has held that a "specific warning" under Section 1547(b)(2) is one that "precisely enunciate[s] ... that a driver's license *will be* revoked." *Everhart v. Commonwealth of Pennsylvania*, 54 Pa. Cmwlth. 22, 420 A.2d 13, 15 (1980) (emphasis added). In *Everhart*, we found that using the words "could be revoked" instead of "will be suspended" created a doubt. Accordingly, the licensee was entitled to have the doubt construed in his favor and against PennDOT, which was held not to have satisfied the mandate of Section 1547(b)(2).[8] *See also Peppelman v. Commonwealth*, 44 Pa.Cmwlth. 262, 403 A.2d 1041, 1043 (1979) (an officer's state-

*ing Adjustment*, 946 A.2d 356 (D.C.2008) (an ambiguity in a revised building permit was resolved in favor of the individuals seeking review such that the issuance of the revised building permit did not trigger the 60–day appeal period).

8. In *Everhart*, the matter was remanded to the trial court for a determination of whether the

ment that the motorist's refusal to undergo chemical testing "could" result in a suspension was found to be an "inaccurate performance" of the statutory warning thereby requiring a reinstatement of the operator's license).

By PennDOT's own admission, the DL–26 warning read to Yourick was capable of being construed as not applying to her because she had not previously refused testing and had never been convicted of DUI.[9] The trial court found, as fact, that Yourick refused chemical testing for the reason that she had no prior refusals or DUI sentences. Indeed, Yourick testified that had she understood the true meaning of the DL–26 warning, she would have agreed to the request for chemical testing. Instead of being warned, Yourick received misleading comfort from the phraseology of the DL–26 warning read to her.

Precedent establishes that a doubtful or ambiguous notice will be construed against the drafter. This principle has been applied, specifically, to warnings given under Section 1547(b) of the Vehicle Code. Yourick is entitled to have the ambiguity in PennDOT's DL–26 warning construed in her favor. As a consequence, PennDOT did not meet its burden of proving that it had "specifically warned" Yourick, as was required in order for PennDOT to suspend her license. *Todd v. Department of Transportation, Bureau of Driver Licensing*, 555 Pa. 193, 197, 723 A.2d 655, 657 (1999).[10] Yourick was not warned; to the contrary, she was misinformed. The officer's "inac-

curate performance" of the statutory warning requires that Yourick's operator's license be reinstated. *Peppelman*, 403 A.2d at 1043.

This is not a close case. I would affirm the trial court.

Judge McGINLEY and Judge PELLEGRINI join.

---

officer subsequently read the licensee a proper warning that his license "will" be revoked.

9. PennDOT argues that the notice is not "so ambiguous" that it could not satisfy the mandate of 75 Pa.C.S. § 1547(b)(2). It offers no guidance on how to separate a "so ambiguous" notice from a merely "ambiguous" notice. It offers no authority to support the proposition that an ambiguous notice can ever satisfy a statutory mandate.

10. To suspend a license under authority of Section 1547(b)(2), the Department of Transportation must prove that the driver (1) was placed under arrest for driving under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was *specifically warned* that a refusal *would result* in the suspension of his or her driver's license. *Todd*, 555 Pa. at 197, 723 A.2d at 657–658 (emphasis added).