John T. Hayes,                          :
                    Appellant           :
                                        :
            v.                          :
                                        :
Commonwealth of Pennsylvania,           :
Department of Transportation,           :    No. 1196 C.D. 2017
Bureau of Driver Licensing              :    Submitted:  January 26, 2018


BEFORE:     HONORABLE ROBERT SIMPSON, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                  FILED:  February 27, 2018


            John T. Hayes (Licensee) appeals from the order of the Court of
Common Pleas of Dauphin County (trial court) reinstating the 12-month driver's
license suspension imposed by the Pennsylvania Department of Transportation,
Bureau of Driver Licensing (DOT) pursuant to the Vehicle Code's Implied Consent
Law, 75 Pa. C.S. § 1547(b) (Implied Consent Law), and dismissing Licensee's
appeal of the same.  Upon review, we affirm.

            No dispute exists as to the underlying facts of this matter.  On January
2, 2017, Lower Swatara Township Police stopped a vehicle driven by Licensee for
suspicion of Driving Under the Influence in violation of 75 Pa. C.S. § 3802 (DUI).
At that time, police requested that Licensee submit to chemical testing, including
blood testing, and read Licensee DOT's DL-26B implied consent form, which
explained that Licensee would face a driver's license suspension of at least 12

months for failure to submit to blood testing. Licensee refused to submit to blood testing.

On February 1, 2017, DOT notified Licensee by letter that, as a result of his refusal to submit to blood testing on January 2, 2017, his driver's license would be suspended pursuant to the Implied Consent Law for 12 months effective March 8, 2017. On March 1, 2017, Licensee appealed to the trial court.[1] The trial court conducted a license suspension hearing on June 22, 2017. On August 3, 2017, the trial court entered its order dismissing Licensee's driver's license suspension appeal and reinstating the 12-month suspension. On August 28, 2017, Licensee filed a timely notice of appeal to this Court.[2]

Licensee raises two claims in this appeal. First, Licensee alleges the Implied Consent Law in effect at the time of his arrest required that police give both the civil and criminal consequence warnings for refusal when requesting a suspect submit to chemical testing following a DUI arrest, and that the police's failure to comply requires reversal of his license suspension. *See* Licensee's Brief at 4. Second, Licensee alleges the criminal consequences warning of chemical testing refusal cannot be severed from the Implied Consent Law without "eviscerating" the intent of the General Assembly. *Id.*

Licensee first argues that DOT cannot suspend his license because the warning police provided Licensee via the DOT DL-26B form did not comply with statutory requirements. *See* Licensee's Brief at 8-20. Licensee notes that the text of the Implied Consent Law stated that it *shall* be the duty of police to inform

---

[1] Licensee's appeal to the trial court tolled Licensee's license suspension.

[2] "Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion." *Negovan v. Department of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017).

2

individuals that (1) their refusal will result in a suspension of operating privileges, *and* (2) a post-refusal DUI conviction will result in increased criminal penalties. *Id.* Licensee claims that DOT's DL-26B form, which discusses only the civil repercussions of chemical testing refusal, did not comply with the statute and provided inadequate warnings regarding testing refusal consequences. *Id.* We disagree.

> Initially, we note:

> To sustain a license suspension under Section 1547(b) of the Vehicle Code [75 Pa. C.S. § 1547(b)], DOT has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once DOT meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

*Giannopoulos v. Department of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013) (quoting *Wright v. Department of Transp., Bureau of Driver Licensing,* 788 A.2d 443, 445 (Pa. Cmwlth. 2001)). In the instant matter, the parties stipulated that Licensee was driving the vehicle, that police had probable cause upon which to arrest him and request that he submit to chemical testing, and that police reviewed the DOT DL-26B form with Licensee prior to his refusal to submit to blood testing. Thus, we need only concern ourselves with the adequacy/propriety of the warning police gave Licensee prior to his refusal of chemical testing.

Pennsylvania's Implied Consent Law authorizes driver's license suspensions for drivers arrested for DUI but who refuse requested chemical testing and requires police to inform motorists of the consequences of refusal. *See* 75 Pa. C.S. § 1547(b)(1) & (2). At the time of Licensee's arrest, the text of the Implied Consent Law directed police to issue certain warnings to individuals arrested for DUI in conjunction with a request to conduct chemical testing as follows:

> (2) It shall be the duty of the police officer to inform the person that:
>
> > (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and
> >
> > (ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

*Former* 75 Pa. C.S. § 1547(b)(2). The first of these warnings explained the civil penalties drivers faced for refusing chemical testing. 75 Pa. C.S. § 1547(b)(2)(i). The second warning explained possible increased criminal penalties an individual who refused chemical testing would face following conviction for a Section 3802(a)(1) DUI offense.[3] 75 Pa. C.S. § 1547(b)(2)(ii). The communication of both

---

[3] Vehicle Code Section 3802(a)(1) defines general impairment DUI and is the only section that permits conviction of a defendant for an alcohol-based DUI charge in the absence of a known blood or breath alcohol concentration, the determination of which requires chemical testing. 75 Pa. C.S. § 3802(a)(1). Normally, Section 3802(a)(1) convictions receive sentences pursuant to the possible maximum penalties outlined in Section 3804(a), the least severe classification of possible penalties for DUI convictions in Pennsylvania. *See* 75 Pa. C.S. § 3804(a). However, pursuant to former Section 1547(b)(2)(ii), defendants arrested for alcohol-based DUIs who refused chemical testing, and who were convicted only of a Section 3802(a)(1) general impairment DUI as a result,

the criminal and civil warnings regarding refusals was mandatory under former Section 1547. *See Department of Transp., Bureau of Driver Licensing v. Weaver*, 912 A.2d 259, 264 (Pa. 2006) (noting Section 1547(b) commanded police to warn motorists of the criminal enhancements attendant to refusal of chemical testing in DUI arrests).

Pursuant to the Implied Consent Law, DOT created the DL-26 form, which warned motorists arrested for DUI about the enhanced civil and criminal penalties for chemical testing refusals thusly:

> If you refuse to submit to the chemical test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months. In addition, if you refuse to submit to the chemical test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000, up to a maximum of five years in jail and a maximum fine of $10,000.

DOT Form DL-26. Police used this DL-26 form to comply with the requirements of Section 1547 during DUI arrests from early 2004 through mid-2016.

---

would face punishment under Section 3804(c) instead of Section 3804(a). Section 3804(c) details the permissible criminal penalties for DUI convictions under Sections 3802(c) (pertaining to the highest level of intoxication) and 3802(d) (pertaining to controlled substance intoxication), which are significantly more severe than the penalties outlined in Section 3804(a). *See* 75 Pa. C.S. § 3804(c).

On June 23, 2016, the Supreme Court of the United States rendered its decision in *Birchfield v. North Dakota*, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016). In *Birchfield*, the Supreme Court determined that criminal penalties imposed by the states upon individuals who refuse to submit to a warrantless blood draw violated the Fourth Amendment's protection against unreasonable search and seizure. *Id.* at 2185-86. Thereafter, the Superior Court of Pennsylvania held, "that, pursuant to *Birchfield*, in the absence of a warrant or exigent circumstances justifying a search, a defendant who refuses to provide a blood sample when requested by police is not subject to the enhanced penalties provided in 75 Pa.C.S.[] §§ 3803-3804." *Commonwealth v. Giron*, 155 A.3d 635, 640 (Pa. Super. 2017); *see also Commonwealth v. Evans*, 153 A.2d 323 (Pa. Super. 2016). On the civil side,[4] this Court determined that, although it may have some impact on criminal DUI proceedings, *Birchfield* has no bearing on civil license suspensions under the Implied Consent Law.[5] *Boseman v. Department of Transp., Bureau of Driver Licensing*, 157 A.3d 10, 21 (Pa. Cmwlth.), *appeal denied*, 170 A.3d 996 (Pa. 2017).

In response to the *Birchfield* decision, and after conferring with the Pennsylvania District Attorneys' Association, DOT revised the DL-26 form to remove reference to the enhanced criminal repercussions of refusal.[6] The DOT's

---

[4] "[A] license suspension stemming from a refusal to submit to chemical testing is a separate administrative proceeding from a criminal DUI proceeding arising out of the same incident." *Boseman v. Department of Transp., Bureau of Driver Licensing*, 157 A.3d 10, 20 (Pa. Cmwlth.), *appeal denied*, 170 A.3d 996 (Pa. 2017).

[5] In fact, the Supreme Court of the United States expressly stated that it did not intend its decision in *Birchfield* to cast doubt on the constitutionality of implied consent laws. *See Birchfield*, 136 S.Ct. at 2185.

[6] Prior to *Birchfield*, the DOT's DL-26 form contained accurate 1547(b) warnings. *Yourick v. Department of Transp., Bureau of Driver Licensing*, 965 A.2d 341, 345 (Pa. Cmwlth. 2009) (*en banc*).

6

revised form – designated as the DL-26B form – eliminated the Section 1547(b)(2)(ii) warning that refusal to submit to chemical testing would result in possible enhanced criminal penalties. *See* DOT DL-26B Form. The DL-26B form preserved, however, the Section 1547(b)(2)(i) warning that refusal to submit to requested chemical testing would result in at least a 12-month driver's license suspension. *Id.*

On July 20, 2017, the General Assembly amended the Implied Consent Law to eliminate the section 1547(b)(2)(ii) enhanced criminal penalties for refusing to submit to the warrantless testing of one's blood.[7] *See* Act of July 20, 2017, P.L. 333, § 3; *see also* 75 Pa. C.S. § 1547.

Here, Licensee first contends that, because the language of the Implied Consent Law ostensibly requires both a civil and criminal warning, the DL-26B form that police read to Licensee, which omitted the criminal warning, failed to comply with the requirements of former Section 1547, and that such failure requires a reversal of his 12-month license suspension for refusal to submit to the blood test requested by police upon his arrest for alcohol-based DUI. *See* Licensee's Brief at 8-20. Effectively, Licensee argues that, because the General Assembly had not yet

---

[7] The current version of section 1547 reads, in relevant part:

> (2) It shall be the duty of the police officer to inform the person that:
> (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing and the person will be subject to a restoration fee of up to $2,000; and
> (ii) if the person refuses to submit to chemical breath testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa. C.S. § 1547(b)(2). Under this amended statute, the increased penalties for chemical testing refusal apply only to breath testing, the legality of which was unaffected by *Birchfield*. *See Giron*, 155 A.3d at 640 n.13.

7

amended former Section 1547 at the time of his arrest, DOT and the police had to continue to apply former Section 1547 in its entirety, including the mandated warning regarding unconstitutional enhanced criminal penalties for chemical testing refusal. We disagree.

At the time of arrest, police read Licensee the warnings as provided in the revised DL-26B form. The revised DL-26B form includes the civil warning from Section 1547(b)(2)(i), but not the criminal warning previously mandated by former Section 1547(b)(2)(ii). Pursuant to *Birchfield*, and the Superior Court of Pennsylvania's subsequent holdings thereon, the DL-26B form now provides an accurate warning of the civil consequences Pennsylvania motorists face for refusing to submit to requested chemical testing when arrested for DUI.

Licensee forwards the exact argument this Court recently reviewed and rejected in *Garlick v. Department of Transp., Bureau of Driver Licensing*, ___ A.3d ___, 2018 WL 264629 (Pa. Cmwlth., 48 C.D. 2017, filed Jan. 3, 2018). In *Garlick*, the appellant argued that, at the time police read him the DL-26B warning, the form did not include warnings about both criminal and civil consequences for refusal, and therefore failed to conform to the text of Section 1547(b)(2)(ii), which the General Assembly had not yet amended. *Garlick*, slip op. at 1-2, 2018 WL 264629 at *1. As the Court explained, "Licensee's argument [was], in effect, that because the General Assembly did not immediately amend Section 1547(b)(2)(ii), DOT and the police had to continue to apply Section 1547(b)(2)(ii)." *Id.*, slip op. at 10, 2018 WL 264629 at *5. In discussing appellant's claim, this Court noted that,

> [a]lthough, at the time [police] requested that Licensee
> submit to a blood test, Section 1547(b)(2)(ii) still required
> a warning that a licensee would be subject to enhanced
> criminal penalties under Section 3804(c) for refusing a test
> of his blood, Licensee could not, as a matter of

8

constitutional law, be subject to such penalties. Stated simply, enhanced criminal penalties were not a consequence of Licensee's refusing the blood test.

*Id.* In rejecting the claim, the Court further explained:

Licensee seems to suggest [] that, in order for his license suspension to be valid, [the police] had to violate Licensee's Fourth Amendment rights by warning Licensee about the no-longer enforceable enhanced criminal penalties because Section 1547(b)(2)(ii) still required that warning. This constitutional violation, according to Licensee's interpretation of these cases, would have no impact on his license suspension and, therefore, there was no reason for [the court of] common pleas to consider *Birchfield* in this proceeding. To put it simply, Licensee's argument encourages officers to violate licensees' Fourth Amendment rights thereby jeopardizing their criminal prosecutions in order to comply with Section 1547(b)(2)(ii) even though the criminal penalty in the warning is no longer enforceable and, therefore, no longer a consequence of refusing a blood test. We cannot countenance such an argument.

*Id.*, slip op. 12-13, 2018 WL 264629 at *5 (footnote omitted).

Licensee in the instant matter raises the same argument as did the appellant in *Garlick*. For the same reasons explained in *Garlick*, we find Licensee's argument that his license must be reinstated because police failed to provide a warning that his refusal would subject him to no longer constitutionally permissible enhanced criminal penalties to be unpersuasive. *See Garlick*, slip op. 12-13, 2018 WL 264629 at *5. As in *Garlick*, the police in the instant matter specifically and accurately warned Licensee of the civil consequences he faced by refusing to submit to blood testing. Accordingly, Licensee's first claim fails.

9

In his second claim, Licensee argues the enhanced criminal consequences warning of former Section 1547(b)(2)(ii) cannot be severed from Section 1547 without eviscerating the statute of the intent of the General Assembly. *See* Licensee's Brief at 20-31. Licensee argues the General Assembly intended the criminal and civil sanctions contained within the Implied Consent Law to go together to ensure the statutory penalties for refusal were "truly consequential: a 'double whammy.'" *Id.* at 22. We disagree.

Initially, Licensee's contention regarding the punitive intent of the Implied Consent Law is incorrect. License suspension is a separate civil sanction the General Assembly created to forward its goal of preventing drunk driving, and which the General Assembly imposed *in addition to* the statutorily permissible criminal punishments outlined in Section 3804 (which increase with the severity of intoxication and frequency of violation). As this Court has explained:

> The objective of the Implied Consent Law is to protect the public by providing an effective means of denying intoxicated motorists the privilege of using the highways of this Commonwealth. A further purpose of the Implied Consent Law is to facilitate the acquisition of chemical analyses and to permit their utilization in legal proceedings. The mischief sought to be remedied by the Implied Consent Law is the number of fatalities and injuries which occur every day on our roads as a result of drivers operating vehicles under the influence of alcohol and/or drugs. The objective of preserving the life and health of this Commonwealth's motorists is most important, and the statute should be liberally construed to effect its objective and promote justice. *See* 1 Pa.C.S. § 1928(b).

*Occhibone v. Department of Transp., Bureau of Driver Licensing*, 645 A.2d 327, 330–31 (Pa. Cmwlth. 1994) (some internal citations and footnote omitted). *See also*

10

*Todd v. Department of Transp., Bureau of Driver Licensing*, 723 A.2d 655, 658 (Pa. 1999) ("The implied consent provisions of the Vehicle Code were enacted to address the hazard of impaired drivers on public roads.").  In addition to denying intoxicated motorists the future privilege of using the Commonwealth's highways, the former Section 1547(b)(2) warnings served the purpose of enlightening motorists "of the consequences of a refusal to take the test so that he can make a knowing and conscious choice."  *Department of Transp., Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 877 (Pa. 1989).  Thus, the dual purposes of the Section 1547(b)(2)(i) warning are (1) to protect the citizenry of the Commonwealth from intoxicated drivers and (2) to allow persons arrested for DUI to make an informed, knowing, and conscious choice about whether or not to refuse chemical testing.

Additionally, Section 1925 of Pennsylvania's Statutory Construction Act states that all statutes are presumptively severable.  1 Pa. C.S. § 1925;[8] *see also Commonwealth v. Williams*, 832 A.2d 962, 986 (Pa. 2003).

---

[8] Section 1925 provides:

**§ 1925. Constitutional construction of statutes**

The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

1 Pa. C.S. § 1925.

11

> Severance is precluded only where, after the void provisions are excised, the remainder of the statute is incapable of execution in accordance with legislative intent. Furthermore, the fact that an unconstitutional provision is found within an otherwise valid section does not preclude its severance.

*Williams*, 832 A.2d at 986 (internal citations omitted).

Per Section 1547, DOT's original DL-26 form informed licensees of both the criminal and civil consequences of refusing requested chemical testing following a DUI arrest. *Birchfield*, and its Pennsylvania progeny, ruled unconstitutional the *criminal* enhancements referenced in former Section 1547(b)(2)(ii) for refusal to submit to chemical testing. *See Birchfield*, *Giron*, *Evans*. Those cases had no bearing, however, on the *civil* consequences contained in Section 1547 – the license suspension – which forward the General Assembly's goal of preventing drunk driving in the Commonwealth and which are capable of imposition in the absence of the enhanced criminal consequence language contained in former Section 1547(b)(2)(ii). *See Boseman*. Accordingly, severance of the invalid criminal enhancement language from the Implied Consent Law did not "eviscerate" the statute and did not adversely affect the application of the remainder of the statute.

For the above reasons, the trial court properly dismissed Licensee's appeal and reinstated the suspension of his license. Accordingly, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John T. Hayes, : 
             Appellant : 
           : 
          v. : 
           : 
Commonwealth of Pennsylvania, : 
Department of Transportation, :    No. 1196 C.D. 2017
Bureau of Driver Licensing : 

## O R D E R

AND NOW, this 27th day of February, 2018, the order of the Court of Common Pleas of Dauphin County dated August 3, 2017 is hereby AFFIRMED.


_____
CHRISTINE FIZZANO CANNON, Judge